Temple, C.
This appeal is from a judgment of the superior court of Los Angeles County annulling an order made by the common council of the city of Los Angeles sitting as a board of equalization.
The judgment was rendered in a proceeding under a writ of review, issued upon a petition and the affidavit of John Milner, the cashier of the plaintiff, a corporation doing a general banking business at Los Angeles. No return to the writ was made; but it was stipulated that “ the said petition and the matters stated therein shall be treated and considered as the certified transcript of the record and proceedings of the city council sitting as a board of equalization in the matter of the assessment complained of.”
This stipulation is not altogether satisfactory. Questions raised upon such a proceeding are to be determined by an inspection of the record, and, in general, not upon pleadings or evidence. It is perfectly manifest that many matters stated in the petition were not, and could not have been, in the records of the board of equaliza *321 tion. The only course open to us would seem to be to regard only those matters as transcripts of the record which are stated to be such, or are such orders as were required to be entered in the minutes of the board. For instance, the petition set's forth what petitioner claims was the evidence taken before the board.’ It is not stated that this evidence is set out in the minutes of the board, and the law did not require it to be done. We are not bound to consider this evidence as something apparent upon the face of the record;
The proceeding before the board was taken for the purpose of ordering the assessor to add certain property to the assessment roll, and an objection is made that the city of Los Angeles has not power to assess, levy, or collect taxes, because the legislature has not granted such authority by a general law, as required by the constitution. This question was decided adversely to respondent in the recent case of Security Sav. Bank v. Hinton, ante, p. 214, and need not be again considered.
The petition shows that petitioner duly made and returned-to the city assessor a list of all the personal property which was in its possession or under its control on the first Monday of March, 1891; that all its personal property, except mortgages, at that date subject to assessment for city taxes were, money $21,465.33, vaults and safe $4,000; that the city assessor listed and assessed to petitioner, money on hand $21,465.33, solvent credits unsecured $2,774, vaults and safe $4,000; that the city council, sitting and acting as a board of equalization August 5, 1891, ordered notice to be given petitioner to show cause, August 12, 1891, before the board, why its assessment of solvent credits should not be increased from $2,774 to $275,000. The notice given was in writing, as follows: —
et Los Angeles, Cal., Aug. 5, 1891.
61 To Farmers’ and Merchants’ Bank, John Milner, Cashier.
“ You are hereby notified to appear before the board of equalization of the city of Los Angeles on Wednes *322 day, the twelfth day of August, 1891, at ten o’clock, a. m., in the council chamber in the city hall, and show cause why your assessment on solvent credits should not be increased from $2,774 to $275,000.
By order of the board of equalization.
“ Freeman G. Teed,
“ City Clerk, and Clerk of said Board, “ By Geo. F;. Seif, Deputy.”
That no other notice was given, but petitioner appeared before the board, by the affiant, and submitted itself to the board, answering such interrogations as were propounded to it, or to the affiant, touching its property. What is averred to be the testimony is set out in the petition, and it is alleged that no other evidence was taken at such hearing. It is claimed that this testimony does not show or tend to show that the petitioner had any solvent credits, or any which had escaped assessment. Nevertheless, the board made and entered in its minutes the following order, which it is claimed the board had no jurisdiction or power to make: “The Farmers’ and Merchants’ Bank, having been notified to appear on August 12th to show cause why its assessment for solvent credits should not be increased from $2,774 to $275,000, and John Milner, cashier of said bank, having appeared in response to said notice, was sworn, and testified in regards the assets of said bank; and it appearing to the board that said bank has returned a false and incomplete list of its taxable property, and that said bank should be assessed for solvent credits to the amount of $270,774, and that it has escaped assessment for solvent credits to the amount of $268,000, on motion of Mr. Tufts it is ordered that the assessor be directed to add to the assessment of said bank for solvent credits the sum of $268,000, and assess the bank for solvent credits in the total sum of $270,774.” That the assessor did, in pursuance of the order, enter upon the assessment roll an addition to the assessment of petitioner the sum of $268,000, solvent credits, making the total of solvent *323 credits assessed to petitioner $270,774, instead of $2,774, as listed and returned by the assessor. ;
1. The first point made upon the record is, that it is j apparent therefrom that the proceeding was n<t to ¡ equalize the values of property which had been listed and assessed by the assessor, but was an attempt by the board to add other property to the list which had not been listed or valued by the assessor. This, it is claimed, the board could not do, as it is not vested with assessorial power. But, plainly, the board did not attempt to add property to the assessment roll, or to exercise assessorial powers. It simply directed the assessor to list and assess two hundred and sixty-eight thousand dollars of solvent credits, which it found had escaped assessment. In this case, it is no objection to the order that it states the value of the item to be added, instead of simply directing the assessor to add the property to the list and assess its value. Respondent itself claims that solvent debts, like gold coin, must necessarily be assessed at their face value. To describe the property, therefore, is to fix its value.
The board was authorized to make the order by section 3681 of the Political Code, which the city charter expressly makes applicable. It is claimed that this section of the code is unconstitutional, because the state constitution expressly defines the powers and duties of both the state and county boards of equalization, and the power to cause property to be added to the assessment roll is not there given.
The premise is admitted, but I can see no force or logic in the conclusion. It is not claimed that the power comes from the constitution, but from the act of the legislature. Section 3681 of the Political Code simply extends the power and duty of the assessor, enabling and requiring him, at the request of the board, to list and assess property which he had failed to assess, notwithstanding the time for assessments had passed, and the roll was n.o longer in his possession. And the exercise of this power is directly in accord with the policy *324 and express provisions of the constitution, which requires all property not exempt from taxation to be taxed. (Const., art. XIII., sec. 1.) “If any property subject to taxation should escape assessment in any year, the taxation for that year would not be equal and uniform, nor would all property in this state be taxed in proportion to its value, and the behest of the constitution would not be obeyed.” (Biddle v. Oaks, 59 Cal. 94.)
The exercise of this power by the board of equalization does not obstruct the performance, by the board, of any duty enjoined upon it by the constitution, but is in aid of the functions there created; nor does it disturb the division of powers made by the constitution between the state and county boards.
The cases of Wells, Fargo & Co. v. Board of Equalization, 56 Cal. 194, People v. Sacramento, 59 Cal. 321, and People v. Dunn, 59 Cal. 328, have no bearing upon this subject. In those cases the construction of section 9 of article XIII. of the constitution was considered, and the distinct powers and duties of state and county boards to some extent pointed out. Of course, no valid law could be made disturbing this division of power made by the constitution, and perhaps it would follow that functions or powers given to one board are thereby denied to the other. So far the provisions would constitute a limitation upon legislative power. But it constitutes no argument against the power of the legislature to grant other powers, or to impose other duties upon either board, so long as these implied limitations are not violated.
People v. Hastings, 29 Cal. 449, has no application to the new constitution. One of the chief arguments in favor of constitutional revision was the necessity of getting rid of the provision requiring property to be assessed by assessors elected by the electors of the district in which he exercised his powers. The new constitution contains no such limitation. Besides, as we have seen, the board did not make an assessment, but directed the assessor to do so. The propriety of this *325 course was recognized under the old constitution, when assessorial powers could not be conferred upon any other officer than an elected assessor. (People v. Reynolds, 28 Cal. 107.
2. It is next contended that the board had no power to act in the matter, because the notice was insufficient. It is said' that it gave no information that it was proposed to add other property to the assessment. The position of respondent upon this matter is not quite consistent. Under another point it contends, and quite properly I think, that to increase the assessment of solvent credits is necessarily to increase the subject of taxation, as was said in regard to money in People v. Dunn, 59 Cal. 328. That being so, the notice in question could only have meant that other solvent credits might be added.
The listing of property, however, is part of the process of assessing. The assessment roll includes the list with the values added, and the result is often spoken of as the assessment. The assessment may mean the completed tax list. (Cooley on Taxation, 352.)
Besides, it is averred that the petitioner appeared and submitted itself to the action of the board, and furnished all required evidence as to its property. If the notice was ambiguous or imperfect, the defect was waived by such appearance. (Spring Valley Water Works v. Schottler, 62 Cal. 69; Wade on Notice, 1358.)
3. The next contention is, that the order is void because there was no evidence before the board that any property had escaped assessment. The board had no power to order a new assessment to be made without evidence. (San Francisco v. Flood, 64 Cal. 504.)
The order recites that testimony was taken, and, in effect, that the conclusion was reached from the evidence that the bank had returned a false list of its property, and had escaped assessment for solvent credits to the amount of two hundred and sixty-eight thousand dollars. This must be held conclusive. “It is not a proper function of the writ of review to add to or modify the *326 record with reference to jurisdictional facts determined, therein, but to test the question of jurisdiction on the facts on the face thereof.” (Freeman on Judgments, secs. 263, 619; In re Grove Street, 61 Cal. 453; Ex parte Sternes, 77 Cal. 156; De Pedroreña v. Superior Court, 80 Cal. 144.)
In Hagenmeyer v. Mendocino Co., 82 Cal. 214, it is said: “The record does not show by affirmative proof that the board did not act upon evidence before it. Therefore its order in the premises is conclusive that it did act upon such evidence as was necessary.”
Counsel have cited cases, and no doubt many more could be found from other states, in which the writ of review has been used for the correction of errors. Our code provides: “ The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer.” (Code Civ. Proc., sec. 1074.) It has been held that this language is equivalent to the phrase in section 1068 authorizing the court to inquire whether the tribunal, board, or officer has exceeded the jurisdiction of such tribunal, board, or officer. (Central Pac. R. R. Co. v. Placer Co., 43 Cal. 365.)
But where the writ is understood as affording a remedy for mere errors, it has been held that the question must be determined by an inspection of the record, unless the statute has provided for a bill of exceptions.
In Birdsall v. Phillips, 17 Wend. 464, the common-law rule was elaborately considered by Judge Cowen. After citing numerous cases, he says: “From these authorities and others, I collect the following general rule: Where-ever, were the suit at common law, the matter alleged for error is of such a nature that a bill of exceptions would be essential to its review by writ of error, a certiorari will not reach it, unless some statute has enlarged the effect of that writ in the particular case.”
It is true, the petition sets out certain evidence alleged to have been submitted to the board, and avers that no *327 other evidence was taken. This can certainly have no greater effect than an offer to impeach the record by evidence dehors. It is not stated that the record of the proceedings of the board discloses the evidence,—though if it did, I cannot see how that would help the matter. The board had jurisdiction to inquire as to whether any property of petitioner had escaped assessment. If I am right on the other points disposed of, it had jurisdiction, both as to the subject-matter and the person. This being granted, its procedure within its jurisdiction is no more open to question than it would be were it a court of general jurisdiction. Certainly, it was its province to decide as to the effect of the testimony, and that includes the necessity of determining whether it tended to show, and did show, that property belonging to petitioner had escaped assessment. All its acts after having acquired jurisdiction constituted the exercise of such jurisdiction,—none the less that such acts were erroneous.
Central Pac. R. R. Co. v. Placer Co., 43 Cal. 365, is similar to this. It was a proceeding before a board of equalization to have an assessment reduced. It was claimed that the board acted upon illegal testimony. It is said that the board acted within its jurisdiction, and its rulings could not be reviewed.
Barber v. San Francisco, 42 Cal. 630, is a similar case. It was a writ to review the action of the board of supervisors in regard to a street assessment. It was claimed that the evidence did not justify the conclusion of the board. The court said: “The board therefore had jurisdiction to entertain, hear, and determine the appeal upon the proofs introduced; and if it committed an error in its conclusions as to the facts, the error would not affect their jurisdiction, and could not be reviewed on certiorari. The return of the board to the writ purports to contain the evidence given on the hearing of the appeal, but there is nothing in the record to show what facts the board considered proved, and if there was, and if we should be of the opinion that the board *328 found the facts contrary to the evidence, we could not correct the error in this form of proceeding.” (See also People v. Dwinelle, 29 Cal. 632.)
. But if it can be claimed that the fact as to whether the petitioner had property which had escaped assessment was in any sense jurisdictional, it was nevertheless a fact, as to the existence of which the board was authorized and required to determine in that proceeding. It is said by Wells on Jurisdiction, sec. 62: “ Where the jurisdiction of even an inferior court is dependent on a fact which that court is required to ascertain and settle by its decision, such decision is held conclusive.”
In Evansville v. Railroad Co., 15 Ind. 395, the same doctrine is declared, and numerous authorities cited to the same effect,
Brittain v. Kinnaird, 1 Brod. & B. 432, was trespass for taking a vessel by magistrates. The owner had been convicted under a statute called the Bumboat Act. Evidence was offered to show that the conviction was void, as the court had no jurisdiction, as the vessel was not a boat within the meaning of the act. Chief Justice Dallas considered the case at great length, and concludes that, conceding that the fact were jurisdictional, still it was a fact the court had jurisdiction to determine, and such determination was conclusive.
I do not think, however, the fact was jurisdictional. Jurisdiction was conferred by the statute, the claim that the petitioner had property which had escaped assessment and the service of the notice. If the board had determined that the evidence did not tend to prove the existence of property which had escaped taxation, it would not be doubted that such determination was an act within its jurisdiction. A contrary conclusion must be equally an act within its power. Jurisdiction to determine an issue involves the power to determine it erroneously. Jurisdiction to determine the effect of evidence involves the power to draw erroneous conclusions from it.
*329 I think the judgment should be reversed, and the court below directed to sustain the demurrer.
Haynes, C., and Belcher, C., concurred.
For the reasons given in the foregoing opinion, the judgment is reversed, and the court below is directed to sustain the demurrer.
Paterson, J., Harrison, J., Garoutte, J.
Hearing in Bank denied.